Filed 5/4/15  Hamilton v. Yates CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| PAUL C. HAMILTON,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>JAMES A. YATES et al.,<br><br>Defendants and Respondents. | F069608<br><br>(Super. Ct. No. 10CECG03520)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Kristi Culver Kapetan, Judge.

Paul C. Hamilton, in pro. per., for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Jonathan L. Wolf, Assistant Attorney General, Vickie P. Whitney and Tyler V. Heath, Deputy Attorneys General, for Defendants and Respondents.

-ooOoo-

---

[*]     Before Gomes, Acting P.J., Kane, J. and Poochigian, J.

## INTRODUCTION

Appellant Paul C. Hamilton is a California inmate incarcerated at San Quentin State Prison serving a life term. In September 2010, he filed a civil lawsuit against several named defendants regarding events that occurred while he was incarcerated at Pleasant Valley State Prison. Appellant failed to appear in court on May 6, 2013, the first scheduled trial date. The trial date was ultimately continued to April 21, 2014. Appellant appeared by phone. The court considered the various options for bringing the case to trial as described in *Wantuch v. Davis* (1995) 32 Cal.App.4th 786 (*Wantuch*), but concluded that there was no practical, feasible way of conducting a jury trial in Fresno or at San Quentin. The court then granted defendants' motion to dismiss the action. Appellant appeals. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant, now a 66-year-old inmate at San Quentin State Prison who is serving a life term, brought a civil action for alleged excessive force and violation of his rights under the Eighth Amendment of the United States Constitution and Civil Code section 52.1. Several defendants were named. Subsequently, appellant dismissed one defendant and the court granted summary judgment as to several others, leaving defendants Cabral, Maldonado and Valadez. Respondents timely requested a trial by jury.

Appellant did not appear at the May 3, 2013, trial readiness conference or at the original trial date of May 6, 2013. The trial court denied defendants' motion to dismiss under Code of Civil Procedure section 581, subdivision (b)(5), but the court did set the case for an order to show cause regarding dismissal for June 18, 2013 and, by minute order, ordered the parties to address the following and present possible solutions allowing the trial to proceed:

> "The court is unable to transport the prisoner to the Court for the trial as there is no statutory basis for ordering the prisoner to be transported

to court to attend proceedings in this matter. There is a lack of authority that permits the Court to pay the cost of transportation and security for the prisoner to attend the court proceeding. There is a lack of funds to pay the costs of transportation and security for the prisoner to attend the court proceeding. There is a lack of authority that would permit the Court to pay any appointed counsel. No attorney has offered to take the case pro bono. Holding the trial in prison is not logistically or economically feasible. The Court lacks the technology to conduct a video trial. The only option left for the Court is to defer the action until the prisoner is released or until another solution presents itself."

At the June 18, 2013, hearing, trial was reset for October 21, 2013, with a trial readiness conference calendared for October 18, 2013. At the trial readiness conference, appellant disqualified the assigned trial judge under Code of Civil Procedure section 170.6. The court vacated the October 21, 2013, trial date and scheduled a trial readiness conference for November 6, 2013. The court also ordered the parties to submit declarations regarding how to conduct the trial in light of appellant's incarceration. The trial readiness conference was then reset for December 5, 2013. An additional status conference was scheduled for January 7, 2014, and at that conference the court set the case for a trial readiness conference on April 18, 2014, and for jury trial on April 21, 2014. The court confirmed the case for trial at the April 18, 2014, trial readiness conference.

On April 21, 2014, the date set for trial, defense counsel appeared personally and appellant appeared by telephone. After much discussion and the court's consideration of the various remedies outlined in *Wantuch*, *supra*, 32 Cal.App.4th 786, 792–793, the court granted defendants' motion for dismissal under Code of Civil Procedure section 581, subdivisions (b) and (m), and California Rules of Court, rule 3.1332(d)(5).

At the time of the April 21, 2014, hearing, appellant made several requests of the trial court, including that it order witnesses housed at various state penal institutions to be transported for trial, that appellant be appointed counsel to represent him, and in the alternative to having the case tried in Fresno, that it be conducted at San Quentin by

videoconferencing. The court explained to appellant that it did not have authority to order the Fresno County Sheriff to transport prisoners in other counties. The court also explained that Fresno County was without funds to order that private counsel be appointed for appellant. On the issue of videoconferencing the trial, appellant represented that San Quentin had a video monitor, but defendants submitted a declaration from a San Quentin official indicating that appellant had never requested the use of San Quentin's videoconferencing equipment and the equipment actually belonged to the Board of Parole Hearings, not to the prison. Furthermore, appellant had not issued any subpoenas to his witnesses nor had he checked to see if there was video equipment available at their prisons to use.

On the issue of deferring the trial until after appellant was released from prison, the court determined and appellant agreed that was not a viable option. In April 2014, appellant was 65 years old. He was serving a life sentence and, in his own words, "I'm never getting out from the time that I have." He also stated that deferring the trial until after he was released was not an option. The court granted respondents' motion to dismiss.

### DISCUSSION

Standard of Review

Determining what remedies, if any, are appropriate to ensure an inmate's meaningful access to the courts is committed to the sound discretion of the trial court and is reviewed on appeal under the abuse of discretion standard. (*Wantuch*, *supra*, 32 Cal.App.4th at p. 794.)

Wantuch v. Davis

The trial court dismissed this case after expressly considering the remedies and principles described in *Wantuch*, *supra*, 32 Cal.App.4th 786. In *Wantuch*, a prison inmate brought a legal malpractice action against his former criminal defense attorney. The trial court dismissed his case as a terminating sanction because of Wantuch's failure

4.

to appear at the status conference.  His nonappearance was not willful and was solely the result of his imprisonment.  The appellate court reversed and remanded with directions that the trial court reconsider the matter in light of the prisoner's right of access to the courts.

In light of the problems inherent in prosecuting a civil trial involving a pro se inmate, the *Wantuch* court proposed several possible remedies, including deferral of the action until the prisoner is released, appointment of counsel for the prisoner, transfer of the prisoner to court, utilization of depositions in lieu of personal appearances, holding trial in prison, conducting pretrial proceedings by telephone, propounding written discovery, use of closed circuit television, and implementation of other innovative, imaginative procedures.  (*Wantuch*, *supra*, 32 Cal.App.4th at pp. 792–793.)  A prisoner does not have the right to any particular remedy, including a right to compel a trial court to appoint counsel unless there is a bona fide threat to his or her personal or property interests and no other feasible alternative exists.  In determining an appropriate remedy to secure access, the trial court should consider the nature of the action, the potential effect on the prisoner's property, the necessity for the prisoner's presence, the prisoner's role in the action, the prisoner's literacy, intelligence and competence, the stage of the proceedings, the access of the prisoner to a law library, the length of the sentence, the feasibility of transferring the prisoner to court, and the cost and inconvenience to the prison and judicial systems.  (*Id*. at p. 793.)  In determining the appropriate remedy, the court exercises its sound discretion.  (*Id*. at p. 794.)  In exercising its discretion, the courts are responsible for monitoring civil cases for the purpose of expediting them through the system.  Sanctions are appropriate for failure to comply with delay-reduction rules, but terminating sanctions should not be ordered as a first response when noncompliance is through no fault of the party.  In *Wantuch*, the status conference could have been conducted by written correspondence or by phone.  (*Id*. at p. 795.)  Therefore, the court abused its discretion in terminating the action.  (*Ibid*.)

<u>The Trial Court Did Not Abuse Its Discretion</u>

In the instant case, appellant failed to appear at the first trial date in 2013 and then appeared by phone at the second trial date. On the latter date, appellant advised the court that he had witnesses in other state prisons that he wanted the court to bring to his trial. He requested the appointment of counsel. He suggested that videoconferencing of the trial could take place at his penal institution (San Quentin). He cited statutes purportedly giving the court authority to compel the attendance of inmates at his trial, but the authorities cited by appellant are Penal Code statutes that pertain to the transportation of inmates in criminal actions (Pen. Code, §§ 1567, 2620, 2621; *Swarthout v. Superior Court* (2012) 208 Cal.App.4th 701, 705 (*Swarthout*) [Pen. Code, §§ 2620–2621 apply to criminal actions]). In a footnote, the *Swarthout* court noted that if a prison inmate is a witness in a *civil* action, his testimony may be obtained by deposition in prison (Pen. Code, § 2623) or by two-way electronic audiovisual communication (Pen. Code, § 2624). (*Swarthout*, *supra*, at p. 705, fn. 5.) The record reflects that appellant had made no effort prior to the trial date in April 2014 to depose such witnesses or to otherwise arrange for their trial testimony.

Deferral of the action until the prisoner is released was not an option, which appellant conceded. In April 2014, appellant was 65 years of age, and was serving a life sentence. He stated to the court, "I'm never getting out from the time that I have." He stated that waiting until after his release date to try the case was not an option.

The trial court indicated that holding a trial in San Quentin was not a feasible option. Appellant suggested the use of closed circuit television or videoconferencing, which he asserted was available at San Quentin. The declaration of D. Ebert, litigation coordinator at San Quentin, verified that the videoconferencing equipment at the prison belonged to the Board of Parole Hearings not to the prison and that inmates are not authorized to request the use of such equipment. On the matter of appointing counsel for appellant, the trial court indicated there were no funds with which to appoint counsel.

Moreover, since there was no threat to his personal property interests, the court was under no duty to appoint counsel. (*Wantuch*, *supra*, 32 Cal.App.4th at p. 793.)

The trial court considered all of the possible remedies outlined in *Wantuch* and invited the parties to suggest any others. The court carefully considered the feasibility of how a jury trial could be conducted and where, and concluded that there was no practical, reasonable way to conduct a jury trial in this matter either in Fresno or at San Quentin. The only other remedy would be to defer the action until the prisoner is released, but, in light of his age, his life sentence and appellant's own concession that was not a reasonable option, the court rejected it.

Code of Civil Procedure section 581, subdivision (b)(5) permits a court to dismiss an action when a party fails to appear for trial and the other party asks for a dismissal. Although appellant's failure to personally appear for trial was the result of his imprisonment, he failed to provide the court with a reasonable option for conducting the jury trial of his action. Having considered all possible remedies and having ruled them out for sound reasons, the court did not abuse its discretion in dismissing appellant's case.

## DISPOSITION

The judgment is affirmed.